**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EDIL ROBERTO VINDEL-
MONTOYA,

Defendant-Appellant.

No. 07-1162

(D. Colorado)

(D.C. No. 06-CR-00231-WDM-01)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Edil Vindel-Montoya received a 41-month sentence for his aggravated reentry conviction following his conviction for the sale of heroin nine years

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

earlier. Before this court, he challenges, first, the district court's denial of his motion for substitute counsel, and, second, the reasonableness of the 41-month sentence. Because the district court made the appropriate inquiries as to the motion for substitute counsel, and because the district court's sentence was reasonable, finding "no reason to depart from the guideline range," we affirm Mr. Vindel-Montoya's conviction and sentence. Rec. vol. IV, at 16.

## I. BACKGROUND

A June 20, 2006 indictment charged Mr. Vindel-Montoya with one count of violating 8 U.S.C. § 1326(a) and (b)(2), illegal reentry after deportation, after having been convicted of an aggravated felony offense. On July 13, 2006, the district court appointed counsel to represent Mr. Vindel-Montoya.

### A. Motion for Appointment of New Counsel

At the August 24, 2006 change of plea hearing, Mr. Vindel-Montoya's counsel indicated that he was not ready to proceed. He stated that he had met with Mr. Vindel-Montoya five or six times, but that he had recently experienced a breakdown in communication with his client. Although his client seemed interested in pleading guilty, counsel reported that Mr. Vindel-Montoya "informed me that he did not wish to sign the documents or plea agreement that was prepared in this case and that he wished to have

other counsel represent him." Rec. vol. II, at 2-3.

The district court asked Mr. Vindel-Montoya to explain his concerns. Mr. Vindel-Montoya explained that he and counsel were "not communicating well," that counsel "really only visited [him] three times," and that "it would be better for [him] to . . . speak to another attorney." *Id.* at 5-6. Mr. Vindel-Montoya stated he could not afford an attorney.

The district court denied Mr. Vindel-Montoya's request for a substitution of counsel, ruling that "[i]f there is any breakdown in communication, it would be self-imposed by the defendant." *Id.* at 6. The court ordered counsel to schedule a plea hearing or a status hearing or a status report within 30 days.

On September 19, 2006, counsel filed a status report, informing the district court that Mr. Vindel-Montoya's brother intended to retain private counsel for Mr. Vindel-Montoya. At the October 12, 2006 status hearing, counsel informed the court that Mr. Vindel-Montoya's family was in the process of hiring retained counsel, Mr. Gilberto Espinoza. The district court ordered a change of plea hearing for November 17, 2006, which it rescheduled for December 18, 2006. Mr. Espinoza entered his appearance on December 15, 2006.

B. Mr. Vindel-Montoya's Sentence

On December 18, 2006, Mr. Vindel-Montoya pleaded guilty to the

reentry charge. The presentence investigation report (PSR) reflected a base offense level of 8, and a 16-level increase based upon a prior conviction for a drug trafficking offense that resulted in a prison sentence greater than thirteen months. *See* U.S.S.G. § 2L1.2(b)(1)(A)(i). From this adjusted offense level of 24, Mr Vindel-Montoya received a three-level decrease based upon his acceptance of responsibility, resulting in a total offense level of 21. With a criminal history category of II, the recommended United States Sentencing Guideline range was 41 to 51 months' imprisonment. Apart from typographic errors, Mr. Vindel-Montoya did not object to the calculations in the PSR.

At the sentencing hearing, Mr. Espinoza explained that, in 2001, Mr. Vindel-Montoya returned to the United States to assist his mother (now deceased), who was in poor health and needed money for medication to treat her diabetes. Several witnesses testified that Mr. Vindel-Montoya worked hard at running a lunch wagon and was a coach and a player with a Hispanic soccer league team. His family and friends testified that he had learned from his previous drug-trafficking conviction, and that, as "a very gentle and calm man," he was devoted to his family, and "he has lived his life in a . . . thoughtful and decent and calm" manner. Rec. vol. IV, at 8.

Mr. Vindel-Montoya stated that he returned to assist his mother, and also to financially assist his common-law wife and his very young son. He

-4-

stated that he did not realize the consequences of his return, and he

apologized.  Defense counsel asked for a 24-month sentence.

The district court acknowledged its obligation to consider the

statutory sentencing factors set forth in 18 U.S.C. § 3553(a), and asserted it

had done so.  The court made several formal findings and conclusions

regarding the statutory factors and what an appropriate sentence for Mr.

Vindel-Montoya would be.  Specifically, the court noted:

> The sentence needs to reflect the seriousness of the offense and promote respect for the law and constitute a just and reasonable punishment.  As we all know, the issue of illegal entry into this country has become a serious problem, as is the drug trafficking.  And the defendant presents as [sic] an individual with individual accomplishment and support from his family and community, which is encouraging to me, but also represents two serious issues that this country has to deal with.

*Id*. at 15.

> And it is my job to come up with an appropriate punishment; what will prevent the defendant from committing the same crime and protect the public from those crimes. I'm told that he has learned his lesson and didn't realize that there was such a significant punishment.

*Id*. at 15-16.

> I, of course, can understand how that might not be understood by an individual in his circumstances.  But these are serious offenses, and I do conclude that to depart from the guideline recommendations would be an unwarranted disparity.
>
> Unfortunately, there are many others in defendant's position that come before me on a daily basis almost, and regrettably, there almost always seems to be a family and reasons why punishment

will be difficult.  But I see no reason to depart from the guideline range and will sentence the defendant in accordance with his plea agreement and the recommendation.

*Id.* at 16.  The district court then sentenced Mr. Vindel-Montoya to 41 months' imprisonment, followed by a three-year term of supervised release.

Mr. Vindel-Montoya, proceeding pro se, filed a timely appeal.

## II. DISCUSSION

Mr. Vindel-Montoya raises two challenges on appeal.  First, he contends that the district court's denial of his August 24, 2006 oral motion for substitute counsel resulted in an unfavorable plea agreement.  Second, Mr. Vindel-Montoya maintains that the district court's imposition of a 41-month sentence was unreasonable.  Taking jurisdiction under 28 U.S.C. § 1291, we affirm.

A. Motion for Appointment of New Counsel

"We review a district court's denial of a motion to appoint substitute counsel for an abuse of discretion."  *United States v. Anderson*, 189 F.3d 1201, 1210 (10th Cir. 1999).  We have held that:

> [s]ubstitution-of-counsel standards are imposed by the Sixth Amendment and require that to warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a *complete breakdown of communication* or an irreconcilable conflict which leads to an apparently unjust verdict. The district court is under a duty to make formal inquiry into the defendant's reasons for dissatisfaction with present counsel when substitution of counsel is requested.

*Id.* (quoting *Johnson v. Gibson*, 169 F.3d 1239, 1254 (10th Cir. 1999)) (internal quotation marks and citations omitted) (emphasis added). "Only when the trial court *unreasonably or arbitrarily interferes* with a defendant's right to counsel of choice do we agree a conviction cannot stand." *United States v. Mendoza-Salgado*, 964 F.2d 993, 1016 (10th Cir. 1992) (emphasis in original).

Both parties acknowledge that standard and analyze the issue under four factors: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; (3) whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) whether the "defendant substantially and unreasonably contributed to the communication breakdown." *United States v. Lott*, 433 F.3d 718, 725 (10th Cir. 2006).

The motion was timely. Additionally, Mr. Vindel-Montoya agrees that the district court complied with its duty to inquire into Mr. Vindel-Montoya's reasons for requesting substitute counsel. Mr. Vindel-Montoya focuses on the third and fourth factors, arguing there was a total breakdown in communication and that breakdown was caused by counsel. He maintains that court-appointed counsel met with him only three times, that he had given him misinformation regarding the case, and that counsel was not

"communicating well" with him. Rec. vol. II, at 5. Mr. Vindel-Montoya suggests the denial of the motion led to an unjust verdict because, by the time Mr. Espinoza entered his appearance, the government and his former counsel had negotiated a plea agreement that neither the prosecution nor the district court were willing to alter.

We agree with the government that the district court did not unreasonably or arbitrarily interfere with Mr. Vindel-Montoya's right to his choice of counsel. In fact, Mr. Vindel-Montoya did retain private counsel.

As to the breakdown in communication, the court made the appropriate inquiries. Although communication between Mr. Vindel-Montoya and his client may have been strained, the court was well within its discretion to determine that the conflict was not irreconcilable or complete. As the court noted, "[t]his case is pretty straightforward" and "pretty simple." *Id.* Given that this was a straightforward case, the court had no reason to think that the breakdown in communication was complete, in a sense that the court could not proceed.

The court asked Mr. Vindel-Montoya what more he wanted an attorney to do. In response, Mr. Vindel-Montoya stated that "it would be better for me to be able to speak to another attorney or I can really explain myself to them." *Id.* The district court questioned appointed counsel about the communication problem. Counsel responded that "the conversations

essentially have been centered upon I want a new lawyer and what I have not been doing for him." *Id.* at 6.

In denying the motion, the district court found that any breakdown "would be self-imposed by the defendant." *Id.* Furthermore, although communication appeared strained, any strategic disagreement is not sufficient to show a complete breakdown in communication. *Lott*, 433 F.3d at 725. We fail to see how Mr. Vindel-Montoya was prejudiced in this case. Thus, the district court did not abuse its discretion when it denied Mr. Vindel-Montoya's motion.

B. The Reasonableness of the Sentence

Mr. Vindel-Montoya next challenges the substantive reasonableness of the court's imposition of the within the advisory guideline range 41-month sentence, arguing that the district court "misjudged the seriousness of the offense of unlawful reentry." Aplt's Br. at 12. He also argues that the district court gave too much weight to his nine-year old non-violent drug trafficking conviction. He argues that his rehabilitative efforts and current exemplary law-abiding lifestyle rebut a presumption of reasonableness.

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), we review sentences for reasonableness. *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). "Our appellate review for reasonableness includes both a procedural component,

encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008). Regarding the former, a sentence is not reasonable if the method by which it was determined was unreasonable or, in other words, if it was based on an improper determination of the applicable Guidelines range. *See Kristl*, 437 F.3d at 1055. In determining whether the district court correctly calculated the recommended Guidelines range through application of the Guidelines, we review *de novo* the district court's legal conclusions and any factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. *See United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006).

We agree with the government that Mr. Vindel-Montoya's sentence was both procedurally and substantively reasonable. We first review for procedural reasonableness, asking whether the district court committed a procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). We then review

for substantive reasonableness "under an abuse-of-discretion standard," and, "[w]hen conducting this review, [we] will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*; *see also Smart*, 518 F.3d at 804-10.

Mr. Vindel-Montoya wisely does not challenge the procedural reasonableness of the district court sentence. The district court more than adequately explained, with specific reference to the § 3553(a) factors, its reasons for rejecting Mr. Vindel-Montoya's request for a sentence below the advisory Guidelines range. *See United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1202(10th Cir. 2007).

*Ruiz-Terrazas* held that "a specific discussion of Section 3553(a) factors is not required for sentences falling within the ranges suggested by the Guidelines." *Id.* As was the case in *Ruiz-Terrazas*, the district court in this case entertained extensive arguments relating to the § 3553(a) factors, specifically noted it had considered Mr. Vindel-Montoya's arguments for a below-Guidelines sentence, indicated on the record it had considered the § 3553(a) factors, and ultimately imposed a sentence within the properly calculated Guidelines range. *See id.* at 1202-03. Thus, the process employed by the district court in imposing Mr. Vindel-Montoya's sentence was reasonable. *See id.*

Having confirmed that the sentence was procedurally reasonable, we

-11-

consider the substantive reasonableness of the bottom of the advisory Guidelines range sentence. *Gall*, 128 S. Ct. at 597. "'The defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in [18 U.S.C.] § 3553(a).'" *United States v. Arrevalo-Olvera*, 495 F.3d 1211, 1213 (10th Cir. 2007) (quoting *Kristl*, 437 F.3d at 1055) (alteration in original)).

Mr. Vindel-Montoya's main contention in rebuttal is that the sixteen-level increase to his offense level, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i), for his previous felony drug conviction overstates the seriousness of his criminal history and of his reentry conviction. He also reminds the court that he had led an exemplary lawful life since he reentered the United States in 2001.

We hold that the district court was well within its discretion when it considered, and rejected, Mr. Vindel-Montoya's arguments. The district court noted that both drug trafficking and illegal entry have "become a serious problem." Rec. vol. IV, at 15. In rejecting Mr. Vindel-Montoya's request for a below-Guidelines sentence, the court again stated that "[t]hese are serious offenses . . . ." *Id.* at 16. *Cf. United States v. Trujillo-Terrazas*, 405 F.3d 814, 819-20 (10th Cir.2005) (reversing a sixteen-level increase for the "quite minor" and "relatively trivial" offense of arson that resulted from a flicked match resulting in $35.00 in damages, because it created a

disconnect between the Guidelines sentence and the § 3553(a) factors).

Furthermore, the district court acknowledged that Mr. Vindel-Montoya's case was a difficult one, but recognized that "there are many others in [his] position that come before me on a daily basis almost, and regrettably, there almost always seems to be a family and reasons why punishment would be difficult." *Id.*

The district court adopted the uncontested factual findings in the PSR and fully considered the arguments Mr. Vindel-Montoya presented in support of his request for a below-Guidelines sentence. At the conclusion of the sentencing hearing, the district court imposed a sentence at the bottom of the correctly calculated advisory Guidelines range.

Having reviewed and considered Mr. Vindel-Montoya's arguments, this court concludes they are insufficient, even when all such arguments are considered in the aggregate, to rebut the *Kristl* presumption of reasonableness. *See* 437 F.3d at 1054. Mr. Vindel-Montoya's arguments simply do not overcome or rebut the presumption of reasonableness that attaches to his bottom-of-the-Guidelines sentence.

### III. CONCLUSION

Accordingly, we conclude that the district court did not abuse its discretion when it denied Mr. Vindel-Montoya's motion for new counsel, we hold that the district court's sentence is reasonable, and we AFFIRM the

district court's judgment.

Entered for the Court,


Robert H. Henry
Circuit Judge